IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAURA MANGUS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-0964-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Laura Mangus seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

I.

Plaintiff alleges that she is disabled due to a variety of ailments, including headaches, muscle spasms, weakness and numbness in both arms, and chronic pain. After her application for disability benefits was denied at the administrative level, plaintiff sought judicial review in federal district court. That action was resolved by an agreed judgment remanding the case to the Commissioner for further consideration of plaintiff's physical limitations and residual functional capacity. On remand, the ALJ was instructed to:

> consider whether or not Mangus' obesity or reflex sympathy disorder are severe impairments, and if so, assess their limitations. In so doing the ALJ will follow the guidelines set out in Social Security Ruling 01-1p, regarding obesity, and 03-2p regarding reflex sympathy.

*Mangus v. Barnhart*, No. 3-06-CV-0481-BF (N.D. Tex. Aug. 29, 2006).

Another administrative hearing was held on August 21, 2007. Once again, the ALJ determined that plaintiff was not disabled and therefore not entitled to disability benefits. Although the medical evidence established that plaintiff suffered from degenerative disc disease, right shoulder impingement, bilateral carpal tunnel syndrome, obesity, and fibromyalgia, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ also found that plaintiff had various medically determinable mental impairments, including Reflex Sympathetic Dystrophy ("RSD"), depression, and anxiety, none of which were severe. As to residual functional capacity, the judge determined that plaintiff could perform a significant range of light work and was capable of working as a Counter Attendant/Clerk--Photograph, a Cafeteria Attendant, and a Case Aid -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In four grounds for relief, plaintiff contends that the ALJ: (1) misunderstood the nature of RSD and failed to follow the guidelines set out in SSR 03-2p as ordered by the district court on remand; (2) did not follow proper legal standards in evaluating the medical opinions of her treating physicians; (3) failed to separately consider any physical limitations related to her neck impairment; and (4) did not evaluate the side-effects of her medications.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether

>the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See generally, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant shows that his substantive rights were prejudiced. *Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

The threshold issue presented on judicial review is whether the ALJ violated the remand order by treating RSD as a mental disorder without considering the physical limitations resulting

from that condition. On remand, the ALJ was instructed to evaluate plaintiff's RSD under the guidelines set out in SSR 03-2p, which describes RSD, also known as Complex Regional Pain Syndrome - Type I, as a chronic neurological pain disorder characterized by "a constellation of symptoms and signs" that may occur following an injury to bone or soft tissue. *See* SSR 03-2p, 2003 WL 22399117 at *1 (2003). Although medical science has not yet defined the pathogenesis of RSD, it is suspected that dysfunction of the sympathetic nervous system is involved.[1] *Id.* The most common clinical manifestations of the disorder are complaints of intense pain, which often is disproportionate to the severity of the injury, and findings indicative of autonomic dysfunction at the site of the original injury. *See id.* at *1-2. While a mental evaluation may be helpful in determining if any undiagnosed psychiatric disease is present that could potentially contribute to a reduced pain tolerance, the regulation provides that "such evaluations are not based on concern that [RSD] findings are imaginary or etiologically linked to psychiatric disease." *Id.* at *3.

SSR 03-2p further provides that "[c]laims in which an individual alleges [RSD] are adjudicated using the sequential evaluation process, just as for any other impairment." *Id.* at *6; *see also Ridenhour v. Astrue*, No. 4-08-CV-156-A, 2009 WL 77765 at *1 (N.D. Tex. Jan. 12, 2009)

---

[1] SSR 03-2p explains that:

> The sympathetic nervous system regulates the body's involuntary physiological responses to stressful stimuli. Sympathetic stimulation results in physiological changes that prepare the body to respond to a stressful stimulus by "fight or flight." The so-called "fight or flight" response is characterized by constriction of peripheral vasculature (blood vessels supplying skin), increase in heart rate and sweating, dilatation of bronchial tubes, dilatation of pupils, increase in level of alertness, and constriction of sphincter musculature.
>
> Abnormal sympathetic nervous system function may produce inappropriate or exaggerated neural signals that may be misinterpreted as pain. In addition, abnormal sympathetic stimulation may produce changes in blood vessels, skin, musculature and bone. . . .

SSR 03-2p, 2003 WL 22399117 at *1-2.

(rejecting argument that SSR 03-2p creates special procedure for evaluating claims involving RSD). A finding that RSD is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs in the affected region. *See* SSR 03-2p, 2003 WL 22399117 at *6. Once the disorder has been established as a medically determinable impairment, "the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* An individual's symptoms and the effects of those symptoms on the ability to function must be considered both in determining the severity of the impairment and in assessing residual functional capacity. *Id.* Where a severe impairment is found to exist, "[c]areful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.* at *7. In sum, SSR 03-2p makes clear that RSD is a neurological disorder that must be evaluated in the same manner as other physical impairments. *Id.* at *1, *6.

Here, the record shows that plaintiff injured her right arm and shoulder in 2001. (*See* Tr. at 178). Since then, she has experienced chronic pain in her arm, shoulder, and neck, (*see id.* at 553), as well as numbness and a loss of mobility in the affected areas. (*See id.* at 555-56). At least two physicians diagnosed plaintiff with RSD. (*See, e.g. id.* at 335, 370, 403). Thus, plaintiff's RSD is a medically determinable impairment. *See Bernstein v. Astrue*, No. 3-09-cv-17-J-34-MCR, 2010 WL 746491 at *5 n.8 (M.D. Fla. Mar. 3, 2010) (RSD was a medically determinable impairment where two physicians opined that claimant suffered from the disorder). Although the ALJ recognized that plaintiff suffered from RSD, he found the condition was a "medically determinable *mental* impairment[]" that, together with depression and anxiety, did not cause "more than minimal limitation in the claimant's ability to perform basic *mental work activities*[.]" (*See* Tr. at 629)

(emphasis added). In making that finding, the judge considered the four broad functional areas set out in the special psychiatric review technique for evaluating *mental disorders*: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. (*Id.*, citing 20 C.F.R. § 404.1520a). The ALJ did not consider any *physical limitations* caused by that condition. By treating RSD as a mental disorder, the ALJ did not follow the guidelines set out in SSR 03-2p as ordered by the court on remand.

The Commissioner argues that the approach used by the ALJ is consistent with SSR 03-2p because the regulation instructs that "[p]sychological manifestations related to [RSD] should be evaluated under the mental disorders listings, and consideration should be given as to whether the individual's impairment(s) meets or equals the severity of a mental listing." *See* SSR 03-2p, 2003 WL 22399117 at *6. This argument is based on a selective reading of the regulation. The provision quoted by the Commissioner applies to Step 3 of the sequential evaluation process, where the hearing officer determines if an impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. *Id.* Because RSD is not a listed impairment, the condition itself cannot be disabling. However, RSD may meet or equal in severity certain impairments described in the regulations if the claimant has related conditions that limit the *physical* or *mental* ability to do basic work activities. Where RSD results in mental impairments, such as depression and anxiety, a psychiatric review technique is appropriate. But plaintiff alleges that she has *physical limitations* related to RSD, including a limited range of motion, weakness and numbness in her arms, and chronic pain. (*See* Tr. at 553, 555-56). In view of this evidence, SSR 03-2p requires the ALJ to evaluate plaintiff's alleged physical impairments as well as her alleged mental impairments. *See McFarland v. Barnhart*, No. 04-C-496-S, 2005 WL 1046503 at *4 (W.D. Wis. Jan. 3, 2005)

(remanding case where ALJ found that plaintiff had RSD, but failed to specifically address her symptoms or the effects of those symptoms on residual functional capacity).

## CONCLUSION

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[2]

SO ORDERED.

DATED: June 15, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[2] By remanding this case for further administrative proceedings, the court does not suggest that plaintiff is or should be found disabled.